## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QUORUM HEALTH CORPORATION, *et al.*,[1] | ) | Case No. 20-10766 (KBO) |
|  | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | **Re: Docket No. 20 & 116** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO
## (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND
## (C) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS;
## (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC
## STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion")[2] of Quorum Health Corporation ("Quorum" or the "DIP Borrower") and each of its affiliates that are debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases and pursuant to sections 105, 361, 362, 363, 364, 365, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, 9006-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Bankruptcy Rules"), seeking entry of a final order (together with all annexes, schedules, and exhibits hereto, this "Final Order"):

---

[1] The last four digits of Quorum Health Corporation's tax identification number are 5208. There are 135 Debtors in these chapter 11 cases, which cases are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Quorum. The location of Quorum Health Corporation's corporate headquarters and the Debtors' service address is 1573 Mallory Lane, Brentwood, Tennessee 37027.

[2] Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the applicable DIP Loan Documents (as defined herein).

(1)     authorizing the DIP Borrower to obtain postpetition financing on a secured superpriority basis, consisting of a new money term loan facility (the "DIP Facility," and the loans issued thereunder, the "DIP Loans") in an aggregate principal amount of up to $100.0 million, of which (x) a maximum aggregate principal amount of $30.0 million became available to the DIP Borrower upon entry of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV Scheduling a Final Hearing; and (V) Granting Related Relief* [Dkt. No. 116] (the "Interim Order," and such financing the "Interim Financing"), (y) a maximum aggregate principal amount of $60.0 million, less the aggregate principal amount of any DIP Loans funded upon the entry of the Interim Order, shall be available to the DIP Borrower upon entry of this Final Order, and (z) following entry of this Final Order, a maximum aggregate principal amount of $100.0 million, less the aggregate principal amount of any DIP Loans previously funded, in unfunded commitments shall be available to the DIP Borrower subject to certain conditions set forth in the DIP Credit Agreement (as defined below), in each case, pursuant to the terms and conditions set forth in, as applicable, the Interim Order and this Final Order (collectively, the "DIP Orders") and that certain credit agreement annexed to the Interim Order as Exhibit 1 (as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Credit Agreement"), executed by the DIP Borrower, GLAS USA LLC, as the administrative agent, and GLAS Americas LLC, as collateral agent for the DIP Facility (collectively, the "DIP Agents"), and each of the Lenders (as defined in the DIP Credit Agreement, the "DIP Lenders," and together with the DIP Agents, the "DIP Secured Parties"), along with any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, escrow agreements, instruments, notes, and documents executed in connection therewith (including any Loan Documents (as defined in the DIP Credit Agreement)) (each as amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, and collectively with the DIP Credit Agreement, the "DIP Loan Documents");

(2)     authorizing the DIP Borrower to incur, and for the Subsidiary Guarantors (as defined in the DIP Credit Agreement, the "DIP Guarantors," and together with the DIP Borrower, the "DIP Loan Parties") to guarantee on an unconditional joint and several basis, the principal, interest, fees, costs, expenses, obligations (whether contingent or otherwise) and all other amounts (including, without limitation, all Obligations as defined in the DIP Credit Agreement), as and when due and payable under each of the DIP Loan Documents (collectively, the "DIP Obligations");

(3)     authorizing the DIP Loan Parties to execute, deliver, and perform under the DIP Credit Agreement and all other DIP Loan Documents, and to perform such other and further acts as may be necessary or desirable in connection with the DIP Orders, the DIP Loan Documents and the transactions contemplated hereby and thereby;

(4)     granting to the DIP Agents, for the benefit of the DIP Secured Parties, and authorizing the DIP Loan Parties to incur, the DIP Liens (as defined below), as applicable, in all DIP Collateral (as defined below), in each case, in accordance with and subject to the relative rights and priorities of (i) the Carve Out (as defined below), (ii) the DIP Agents, on behalf the DIP Secured Parties, (iii) the Prepetition CF Credit Facility Agent (as defined below), on behalf

of itself and the Prepetition CF Credit Facility Lenders (as defined below), and (iv) the Prepetition ABL Credit Facility Agent (as defined below), on behalf of itself and the Prepetition ABL Credit Facility Lenders (as defined below);

(5)     granting to the DIP Agents, for the benefit of the DIP Secured Parties, and authorizing the DIP Loan Parties to incur, allowed superpriority administrative expense claims against each of the DIP Loan Parties, on a joint and several basis, in respect of all DIP Obligations, in each case, in accordance with and subject to the Carve Out and the terms hereof;

(6)     authorizing the DIP Loan Parties' use of Prepetition Collateral (as defined below), including Cash Collateral (as defined below), as well as the proceeds of the DIP Facility, and subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents;

(7)     providing adequate protection, subject to the Carve Out and as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to the extent of any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (including Cash Collateral);

(8)     modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, and providing for the immediate effectiveness of this Final Order;

(9)     authorizing the DIP Loan Parties to waive (a) their right to surcharge the DIP Collateral (as defined herein) pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and

(10)     waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to (a) the DIP Collateral, for the benefit of any party other than the DIP Secured Parties and (b) the Prepetition Collateral, for the benefit of any party other than the Prepetition Secured Parties, subject to the Carve Out.

The interim hearing on the DIP Motion (the "Interim Hearing"), pursuant to Bankruptcy Rule 4001, having been held by this Court on April 9, 2020, and a final hearing (the "Final Hearing" and, together with the Interim Hearing, the "Hearings") having been held by this Court on May 6, 2020, and the Court having considered the DIP Motion, the DIP Loan Documents, *Declaration of Paul Rundell in Support of the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims; (II)*

*Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Dkt. No. 20, Ex. B] (the "Rundell Declaration"), the *Declaration of Jay A. Shiland in Support of the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Dkt. No. 20, Ex. C] (the "Shiland Declaration," and together with the Rundell Declaration, the "DIP Declarations"), the *Declaration of Alfred Lumsdaine, Executive Vice President and Chief Financial Officer of Quorum Health Corporation, in Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 24] (the "Lumsdaine Declaration" or the "First Day Declaration"), the pleadings filed with the Court, and the evidence submitted and arguments proffered or adduced at the Hearings, and upon the record of these chapter 11 cases; and adequate notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date.** On April 7, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these chapter 11 cases. On April 8, 2020, this Court entered an order approving the joint administration of these chapter 11 cases.

B.    **Debtors-in-Possession.** The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of these chapter 11 cases.

C.    **Committee Formation.** As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors under section 1102 of the Bankruptcy Code (together with any other statutory committee that may appointed or formed in these chapter 11 cases or any Successor Cases, the "Official Committee").

D.    **Jurisdiction and Venue.** The Court has core jurisdiction over these chapter 11 cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Venue for these chapter 11 cases and the proceedings on the DIP Motion is proper in this district pursuant to 28

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

U.S.C. §§ 1408 and 1409. The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Bankruptcy Rules 2002-1, 4001-2, 9006-1, and 9013-1.

E.    **Debtors' Stipulations.** Without prejudice to the rights of the DIP Loan Parties' estates or any other party in interest (but subject to the limitations thereon contained in paragraph 27 hereof), the DIP Loan Parties, on behalf of their estates, admit, stipulate, acknowledge, and agree as follows:

(a)    **Prepetition CF Credit Facility:**

(i)    **Prepetition CF Credit Agreement:** Pursuant to that certain credit agreement, dated as of April 29, 2016 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition CF Credit Agreement," and any other agreements and documents executed or delivered in connection therewith, including the Loan Documents (as defined in the Prepetition CF Credit Agreement), the "Prepetition CF Credit Documents"), among the DIP Borrower, Credit Suisse AG, Cayman Islands Branch, as administrative agent and collateral agent under the Prepetition CF Credit Agreement (solely in such capacity, the "Prepetition CF Credit Facility Agent"), and the lenders party thereto (the "Prepetition CF Credit Facility Lenders," and together with the Prepetition CF Credit Facility Agent, the "Prepetition CF Credit Facility Secured Parties"), the Prepetition CF Credit Facility Lenders provided a revolving facility and term loans to the DIP Borrower pursuant to the Prepetition CF Credit Documents (the "Prepetition CF Credit Facility"), and the DIP Guarantors irrevocably and unconditionally guaranteed, on a joint and several basis, all of the Prepetition CF Credit Facility Obligations (as defined below);

(ii)    **Prepetition CF Credit Facility Obligations:** As of the Petition Date, the Loan Parties (as defined in the Prepetition CF Credit Facility) were jointly and severally liable and indebted to the Prepetition CF Credit Facility Agent and the Prepetition CF Credit Facility Lenders, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $800,501,733.42, consisting of $785,336,316.44 in an aggregate outstanding principal amount of loans and $15,165,416.98 in face amount of undrawn letters of credit under the Prepetition CF Credit Facility, plus any other amounts due and payable under the Prepetition CF Credit Documents, including, without limitation, accrued and unpaid interest thereon, premiums, reimbursement obligations (contingent or otherwise), fees, costs, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing or chargeable in connection therewith (including all Obligations as defined in the Prepetition CF Credit Agreement), in each case, as and to the

6

extent provided in the Prepetition CF Credit Documents (collectively, the "Prepetition CF Credit Facility Obligations"); and

(iii)    **Prepetition CF Credit Facility Liens:** To secure the Prepetition CF Credit Facility Obligations, each of the DIP Borrower and the DIP Guarantors granted to the Prepetition CF Credit Facility Agent, for the benefit of the Prepetition CF Credit Facility Secured Parties, properly perfected continuing liens, mortgages on and security interests (collectively, the "Prepetition CF Credit Facility Liens") in all Collateral as defined in the Prepetition CF Credit Agreement (the "Prepetition CF Credit Facility Collateral").

(b)    **Prepetition ABL Credit Facility:**

(i)    **Prepetition ABL Credit Agreement:** Pursuant to that certain credit agreement, dated as of April 29, 2016 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Agreement," and any other agreements and documents executed or delivered in connection therewith, including the Loan Documents (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Credit Documents," and together with the Prepetition CF Credit Documents, the "Prepetition Loan Documents"), among the DIP Borrower, the DIP Guarantors and other parties thereto, UBS AG, Stamford Branch, as administrative agent and collateral agent under the Prepetition ABL Credit Agreement (solely in such capacity, the "Prepetition ABL Credit Facility Agent," and together with the Prepetition CF Credit Facility Agent, the "Prepetition Agents"), and the lenders party thereto (the "Prepetition ABL Credit Facility Lenders," and together with the Prepetition ABL Credit Facility Agent, the "Prepetition ABL Credit Facility Secured Parties," and together with the Prepetition CF Credit Facility Secured Parties, the "Prepetition Secured Parties"), the Prepetition ABL Credit Facility Lenders provided an asset-based revolving facility to the DIP Borrower pursuant to the Prepetition ABL Credit Documents (the "Prepetition ABL Credit Facility," and together with the Prepetition CF Credit Facility, the "Prepetition Facilities"), and the DIP Guarantors irrevocably and unconditionally guaranteed, on a joint and several basis, all of the Prepetition ABL Credit Facility Obligations (as defined below);

(ii)    **Prepetition ABL Credit Facility Obligations:** As of the Petition Date, the Loan Parties (as defined in the Prepetition ABL Credit Facility) were jointly and severally liable and indebted to the Prepetition ABL Credit Facility Agent and the Prepetition ABL Credit Facility Lenders, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $99,000,000, plus any other amounts due and payable under the Prepetition ABL Credit Documents, including, without limitation, accrued and unpaid interest thereon, premiums, reimbursement obligations (contingent or otherwise), fees, costs, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing or chargeable in connection therewith (including all Obligations as defined in the Prepetition ABL Credit Agreement), in each case, as and to the extent provided in the Prepetition ABL Credit Documents (collectively, the "Prepetition ABL Credit Facility

Obligations," and together with the Prepetition CF Credit Facility Obligations, the "Prepetition Secured Obligations"); and

(iii)     **Prepetition ABL Credit Facility Liens:** To secure the Prepetition ABL Credit Facility Obligations, each of the DIP Borrower and the DIP Guarantors granted to the Prepetition ABL Credit Facility Agent, for the benefit of the Prepetition ABL Credit Facility Secured Parties, properly perfected continuing liens, mortgages on and security interests (collectively, the "Prepetition ABL Credit Facility Liens," and together with the Prepetition CF Credit Facility Liens, the "Prepetition Liens") in all Collateral as defined in the Prepetition ABL Credit Agreement (the "Prepetition ABL Credit Facility Collateral," and together with the Prepetition CF Credit Facility Collateral, the "Prepetition Collateral").

(c)     **Validity and Enforceability of Prepetition CF Credit Facility Liens.** Each of the Prepetition CF Credit Facility Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are valid, binding, enforceable, non-avoidable and perfected liens in the Prepetition CF Credit Facility Collateral securing the Prepetition CF Credit Facility Obligations, subject only to pre-existing liens, solely to the extent such liens are permitted to be senior to the respective Prepetition CF Credit Facility Liens as of the Petition Date under the Prepetition CF Credit Documents and such senior liens were existing, valid, enforceable, properly perfected and non-avoidable liens as of the Petition Date or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code against the DIP Loan Parties (the "Prepetition CF Credit Facility Permitted Prior Liens"). The Prepetition CF Credit Facility Liens are not subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, avoidance or other claim, cause of action or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise. The Prepetition CF Credit Facility Liens were granted to or for the benefit of the Prepetition CF Credit Facility Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations secured thereby.

(d)     **Validity and Enforceability of Prepetition ABL Credit Facility Liens.** Each of the Prepetition ABL Credit Facility Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are valid, binding, enforceable, non-avoidable and perfected liens in the Prepetition ABL Credit Facility Collateral securing the Prepetition ABL Credit Facility Obligations, subject only to pre-existing liens, solely to the extent such liens are permitted to be senior to the respective Prepetition ABL Credit Facility Liens as of the Petition Date under the Prepetition ABL Credit Documents and such senior liens were existing, valid, enforceable, properly perfected and non-avoidable liens as of the Petition Date or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code against the DIP Loan Parties (the "Prepetition ABL Credit Facility Permitted Prior Liens," and together with the Prepetition CF Credit Facility Permitted Prior Liens, the "Permitted Prior Senior Liens"). The Prepetition ABL Credit Facility Liens are not subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, avoidance or

other claim, cause of action or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise. The Prepetition ABL Credit Facility Liens were granted to or for the benefit of the Prepetition ABL Credit Facility Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations secured thereby.

(e)    **Relative Priority of the Prepetition Liens Under the Prepetition Intercreditor Agreement.** The Prepetition ABL Credit Facility Agent, the Prepetition CF Credit Facility Agent, the DIP Borrower, and the DIP Guarantors are party to that certain ABL Intercreditor Agreement (the "Prepetition Intercreditor Agreement"), dated as of April 29, 2016, which sets forth the relative lien priorities and other rights and remedies of the Prepetition ABL Credit Facility Secured Parties and the Prepetition CF Credit Facility Secured Parties with respect to, among other things, the Prepetition ABL Credit Facility Collateral and the Prepetition CF Credit Facility Collateral.

(f)    **Validity and Enforceability of Prepetition Secured Obligations.** Each of the Prepetition CF Credit Facility Obligations and the Prepetition ABL Credit Facility Obligations, respectively, constitutes the legal, valid, binding, enforceable and non-avoidable obligations of the DIP Loan Parties that are party to the applicable facilities (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of any of the Prepetition Secured Obligations or any payment made to any of the Prepetition Secured Parties (or applied to or paid on account of any of the Prepetition Secured Obligations), as applicable, at any time is subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, disgorgement, avoidance or any other claim, cause of action or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

(g)    **No Control.**    None of the DIP Secured Parties nor the Prepetition Secured Parties control the DIP Loan Parties or their properties or operations, has authority to determine the manner in which any of the DIP Loan Parties' operations are conducted, or is a control person or insider of the DIP Loan Parties or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Orders, the DIP Facility, the DIP Loan Documents, the Prepetition Facilities, or the Prepetition Loan Documents.

(h)    **Release.** Effective as of the date of entry of the Interim Order, the Debtors, on behalf of themselves and their respective estates, forever and irrevocably released and forever discharged the DIP Secured Parties (solely in their capacity as such) and each of their respective former, current and future officers, directors, employees, shareholders, owners, members, managers, partners, subsidiaries, affiliates, funds or managed accounts, agents, advisors, attorneys, accountants, investment bankers, consultants and other representatives, together with each of their predecessors and successors in interest (collectively, the "Released Parties") from any and all claims, offsets, defenses, counterclaims, set off rights, objections, challenges, causes of action and/or choses in

action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations (including, attorneys' fees), costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, fixed or contingent, pending or threatened, of any kind or nature whatsoever, whether arising at law or in equity (including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, recharacterization, subordination, avoidance, any claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law or any other claim or cause of action arising under the Bankruptcy Code or applicable non-bankruptcy law), in each case, arising under, in connection with, or related to the Debtors or their estates, the extent, amount, validity, enforceability, priority, security and perfection of the DIP Facility, the DIP Obligations, the DIP Liens, the DIP Loan Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of the Interim Order.

(i)    **Cash Collateral.** All of the DIP Loan Parties' cash, whether existing as of the Petition Date or thereafter, wherever located (including, without limitation, all cash on deposit or maintained by the DIP Loan Parties in any account or accounts), constitutes or will constitute "cash collateral" of the Prepetition Secured Parties and DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

F.    **Findings Regarding Corporate Authority.** Upon entry of the Interim Order, each of the DIP Loan Parties had all requisite power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

G.    **Findings Regarding Postpetition Financing and Use of Cash Collateral.**

(i)    *Good Cause.* Good and sufficient cause has been shown for the entry of this Final Order and for authorization of the Debtors to obtain financing pursuant to the DIP Facility and the DIP Loan Documents.

(ii)    *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors' need to use the Prepetition Collateral (including Cash Collateral) and to obtain credit pursuant to the DIP Facility as provided for herein is critical to avoid serious and irreparable harm to the Debtors, their estates, their creditors, and other parties in interest. The Debtors have a need to obtain the DIP Loans and other financial accommodations and to continue to use the Prepetition

Collateral (including Cash Collateral) in order to, among other things: (i) avoid the liquidation of these estates; (ii) permit the orderly continuation of the operation of their businesses, including maintaining, amending, renewing, or modifying insurance policies and surety bonds in the ordinary course of business; (iii) maintain business relationships with customers, vendors, and suppliers, including purchasing necessary materials and services to maintain compliance with all applicable regulatory and safety requirements; (iv) make payroll; (v) satisfy other working capital, capital improvement and operational needs; (vi) pay professional fees, expenses, and obligations benefitting from the Carve Out; and (vii) pay costs, fees, and expenses associated with or payable under the DIP Facility, subject to the terms of the DIP Orders and the DIP Loan Documents. The Debtors' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during the pendency of these chapter 11 cases. The access by the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Loan Documents, and other financial accommodations provided under the DIP Loan Documents are necessary and vital to avoid an immediate liquidation and for the preservation and maintenance of the going concern values of the Debtors. The extensions of credit under the DIP Facility, pursuant to the DIP Loan Documents and the DIP Orders are fair and reasonable, reflect each Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

(iii)    *No Credit Available on More Favorable Terms.* The Debtors have been unable to obtain financing and other financial accommodations from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facility and the DIP Loan Documents. The Debtors have been unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors also have

11

been unable to obtain adequate credit for money borrowed (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code or (b) secured only by a lien on property of the Debtors and their estates that is not otherwise subject to a lien. Postpetition financing is not otherwise available without granting the DIP Agents, for the benefit of the respective DIP Secured Parties, and subject to the Carve Out: (1) the DIP Liens on all DIP Collateral, as set forth herein, (2) the DIP Superpriority Claims (as defined below), and (3) the other protections set forth in the DIP Orders. After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders.

(iv)    *Use of Proceeds of the DIP Facility and Cash Collateral.* As a condition to entry into the DIP Loan Documents, the extension of credit and other financial accommodations made under the DIP Facility and the consent to use Cash Collateral (including, without limitation, the proceeds of the DIP Facility), each of the DIP Secured Parties require, and the Debtors have agreed, that Cash Collateral, the proceeds of the DIP Facility and all other cash or funds of the Debtors, shall be used solely in accordance with the terms and conditions of the DIP Orders and the DIP Loan Documents, as applicable, and only for the expenditures set forth in and permitted by the Approved Budget (as defined below), and for no other purpose.

(v)    *Adequate Protection.* Subject to the challenge rights set forth in paragraph 27 hereof, the Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, 364 and 507 of the Bankruptcy Code, to adequate protection, as and to the extent set forth in this Final Order, of their interests in all Prepetition Collateral, including Cash Collateral, in an amount equal to the diminution in the value of the Prepetition Secured Parties' interests in the

Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any diminution resulting from the use, sale, or lease by the DIP Loan Parties of the Prepetition Collateral, the imposition of the DIP Liens, the payment of any amounts under the Carve Out, and the imposition of the Automatic Stay (the "Diminution in Value"). Based on the DIP Motion, the DIP Declarations, and the First Day Declaration, and the record presented to the Court at the Hearings, the terms of the adequate protection arrangements and of the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

(vi)    *Consent.* To the extent such consent is required, the Prepetition Secured Parties have, or shall be deemed to have, consented to the Debtors' use of Prepetition Collateral (including Cash Collateral) and the DIP Loan Parties' entry into the DIP Facility and the DIP Loan Documents, in each case, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents.

(vii)    *Limitation on Charging Expenses Against Collateral*. No costs or expenses of administration of these chapter 11 cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Secured Parties, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Secured Parties, and nothing contained in this Final Order shall be deemed to be a consent by the DIP Secured Parties to any charge, lien,

assessment or claims against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

(viii)   *No Marshaling*. In no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the DIP Obligations. Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Agents or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any Prepetition Collateral.

(ix)   *Business Judgment and Good Faith Pursuant to Section 364(e)*. Based on the DIP Motion, the DIP Declarations, the First Day Declaration, and the record presented to the Court at the Hearings, (i) the extension of credit and other financial accommodations made under the DIP Facility and the DIP Loan Documents, (ii) the fees and other amounts paid and to be paid thereunder, (iii) the terms of adequate protection granted to the Prepetition Secured Parties, (iv) the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral), and (v) the Cash Collateral arrangements described therein and herein, in each case, pursuant to this Final Order and the DIP Loan Documents, (a) are fair, reasonable, and the best available to the Debtors under the circumstances; (b) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; (c) are supported by reasonably equivalent value and fair consideration; and (d) represent the best financing available. The DIP Facility and the use of Prepetition Collateral (including Cash Collateral) were negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties. The use of Prepetition Collateral (including Cash Collateral) and the credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of section

364(e) of the Bankruptcy Code, and the DIP Secured Parties and the Prepetition Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

(x)    *Good Faith of DIP Secured Parties*. The DIP Facility, the adequate protection granted to the Prepetition Secured Parties, and the use of Prepetition Collateral (including Cash Collateral) hereunder have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and their respective advisors, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility and the DIP Loan Documents, including, without limitation, all loans and other financial accommodations made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and any DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the claims, security interests and liens, and other rights, benefits and protections granted to the DIP Secured Parties (and the successors and assigns thereof) pursuant to this Final Order and the DIP Loan Documents shall each be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xi)    *Good Faith of Prepetition Secured Parties.* The Prepetition Secured Parties have acted in good faith regarding the DIP Facility and the Debtors' continued use of Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses (including the incurrence and payment of any adequate protection obligations and the granting of adequate protection liens), in accordance with the terms

hereof, and the adequate protection claims, security interests and liens, and other rights, benefits and protections granted to the Prepetition Secured Parties (and their successors and assigns thereof) pursuant to this Final Order and the DIP Loan Documents shall be entitled to the full protection of paragraphs 37 and 39 hereof in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xii)    *Initial Budget.* The Debtors prepared and delivered to the DIP Secured Parties and the Prepetition Secured Parties an initial itemized cash flow forecast (the "Initial Budget"), a copy of which was attached as Exhibit 2 to the Interim Order, setting forth all line-item and cumulative cash receipts and operating disbursements (including all necessary and required expenses which the Debtors expect to incur) on a weekly basis for the period beginning as of the week including the Closing Date (as defined in the DIP Credit Agreement) through and including the end of the thirteenth calendar week following such week. The Debtors believe that the Initial Budget is reasonable under the facts and circumstances known to them, taken as a whole, as of the Petition Date. The DIP Secured Parties and the Prepetition Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Initial Budget (as may be updated and approved by the DIP Secured Parties from time to time pursuant to and in accordance with the terms of the DIP Credit Agreement and this Final Order, the "Approved Budget"), in accordance with the terms hereof, and the DIP Loan Documents in determining to enter into the postpetition financing arrangements provided for in the DIP Orders.

(xiii)    *Notice*. Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (a) the U.S. Trustee; (b) the holders of the fifty (50) largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel for the DIP

16

Agents; (d) counsel for the Prepetition CF Credit Facility Agent; (e) counsel for the Prepetition CF Credit Facility Lenders; (f) counsel for the Prepetition ABL Credit Facility Agent; (g) counsel for the Prepetition ABL Credit Facility Lenders; (h) counsel for the Indenture Trustee for the Senior Notes; (i) the holders of the Senior Notes, through their nominees; (j) counsel for the Consenting Lenders; (k) counsel for the Consenting Noteholders; (l) the United States Attorney's Office for the District of Delaware; (m) the Internal Revenue Service; (n) the state attorneys general for all states in which the Debtors conduct business; (o) the Securities and Exchange Commission; (p) the United States Department of Justice; (q) any other local, state, or federal agencies that regulate the Debtors' businesses; and (r) any party that requests service pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Under the circumstances, such notice of the Final Hearing and the relief requested in the DIP Motion complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c), and Local Bankruptcy Rules 2002-1 and 4001-2.

(xiv)  *Relief Essential; Best Interests of the Debtors' Estates*. The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates, and is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their assets and properties.

**NOW THEREFORE,** based upon the foregoing findings and conclusions, the DIP Motion, the DIP Declarations, the First Day Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      **DIP Motion Approved.** The DIP Motion is granted on a final basis, and the financing described herein is authorized and approved, in each case, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents. Any objections to the relief set forth in this Final Order that have not been withdrawn, waived, or settled, and all reservation of rights included therein, are hereby overruled on the merits.

2.      **Authorization of DIP Facility.**

(a)      Subject to the terms and conditions of this Final Order, each of the DIP Loan Parties were, by the Interim Order, and hereby are authorized to execute, enter into, guarantee (as applicable), and perform all obligations under the DIP Facility and the DIP Loan Documents. The DIP Loan Documents and this Final Order govern the financial and credit accommodations to be provided to the DIP Loan Parties by the DIP Lenders in connection with the DIP Facility.

(b)      The DIP Borrower is authorized to incur, and the DIP Guarantors are authorized to unconditionally guarantee, on a joint and several basis, all of the DIP Obligations on account of such incurrence under the DIP Facility, up to an aggregate principal amount of $100.0 million in new money DIP Loans, inclusive of amounts authorized by the Interim Order, and in each case together with applicable interest, protective advances, expenses, fees, and other charges payable in connection with the DIP Facility, subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents.

(c)      Without limiting the foregoing, and without the need for further approval of this Court, each DIP Loan Party was, by the Interim Order, and hereby is authorized to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of pledge and security agreements, deeds of trust, and financing statements), and to pay all fees that may be required, necessary or desirable for the DIP Loan

Parties to implement the terms of, performance of their obligations under or effectuate the purposes

of and transactions contemplated by this Final Order, the DIP Facility, and the DIP Loan

Documents (as applicable), including, without limitation:

       (1)    the execution and delivery of, and performance under, the DIP Loan Documents;

       (2)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents, in each case, as the DIP Loan Parties and the requisite DIP Secured Parties (in accordance with and subject to the terms of the applicable DIP Loan Documents) may agree, it being understood that no further approval of the Court shall be required for non-material authorizations, amendments, waivers, consents or other modifications to and under the DIP Loan Documents (and any fees and other expenses (including any attorneys', accountants', appraisers', and financial advisors' fees), amounts, charges, costs, indemnities, and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder; *provided* that a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to the U.S. Trustee and any Official Committee (if appointed);

       (3)    the non-refundable and, upon entry of the Interim Order, irrevocable payment to the DIP Secured Parties of all fees, costs and expenses, whether paid pursuant to the Interim Order or this Final Order, including, without limitation, (a) any closing fees, upfront fee, exit fee, prepayment fee, unused line fees, arrangement fees, structuring fees, duration fees, commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, servicing fees, liquidator fees, agency fees, prepayment premiums, or similar amounts (which fees, in each case, were, and were deemed to have been, approved upon entry of the Interim Order, and which fees shall not be subject to any challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Loan Documents, and (b) the fees, costs and expenses as may be due from time to time of the DIP Agents and the DIP Lenders, including, without limitation, the fees and expenses of the following professionals (whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated): (i) Kirkland & Ellis LLP, (ii) Jefferies LLC, (iii) any local legal counsel retained by, or on behalf of, the DIP Lenders, (iv) Wilmer Cutler Pickering Hale and Dorr LLP, as counsel to the DIP Agents, and (v) any local legal counsel retained by, or on behalf of, the DIP Agents (including one local bankruptcy counsel and, solely to the extent necessary to exercise its rights and fulfill its obligations under the DIP Loan Documents, one counsel to the DIP Agents in each local jurisdiction) (collectively, each of the professionals described in the foregoing clauses, the "<u>DIP Fees and Expenses</u>"), in each

case, without the need to file retention or fee applications, and without the need to provide notice to any party or obtain further Court approval; *provided* that the DIP Fees and Expenses shall be subject to the review, objection, and approval process set forth in paragraph 22;

(4)     the granting of the DIP Liens (as defined below) and the Adequate Protection Liens (as defined below), the perfection of the DIP Liens and the Adequate Protection Liens, the granting of the DIP Superpriority Claims (as defined below) and the Adequate Protection Claims (as defined below), and the granting of the DIP Protections, in each case, as set forth herein and in the DIP Loan Documents; and

(5)     the performance of all other acts necessary, required or desirable to implement the DIP Facility and to facilitate the transactions contemplated by the DIP Loan Documents and this Final Order.

(d)     No DIP Secured Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP Facility, and each DIP Secured Party may rely upon each DIP Loan Party's representations that the amount of the DIP Facility requested at any time and the use thereof are in accordance with the requirements of this Final Order and the DIP Loan Documents.

3.     **DIP Obligations.** Upon entry of the Interim Order and execution and delivery of the DIP Loan Documents, the DIP Loan Documents constituted valid, binding, enforceable, and non-avoidable obligations of each the DIP Loan Parties, and are fully enforceable against each of the DIP Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of these chapter 11 cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of these chapter 11 cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of these chapter 11 cases or any such successor cases (collectively, the "Successor Cases"), and their creditors and other parties in interest, in each case, in accordance with the terms thereof and the DIP Orders, as applicable. Upon execution and delivery of the DIP Loan Documents, the DIP Obligations included all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by

any of the DIP Loan Parties to any of the DIP Agents or DIP Lenders, in each case, under, or secured by, the DIP Loan Documents or the DIP Orders, including all principal, interest, costs, fees, expenses and other amounts under the DIP Loan Documents (including this Final Order). As of entry of the Interim Order, the DIP Loan Parties are jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date (as defined below) or the occurrence of any event or condition set forth in paragraph 20 of this Final Order. Subject to the Carve Out, no obligation, payment, transfer or grant of security under the DIP Loan Documents or the DIP Orders to the DIP Secured Parties shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset or any other challenge under the Bankruptcy Code or any applicable law.

4.      **No Obligation to Extend Credit.** The DIP Secured Parties shall have no obligation to make any loan or advance under the applicable DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit by the applicable DIP Secured Parties under the applicable DIP Loan Documents and the DIP Orders have been satisfied in full or waived in accordance with their terms.

5.      **DIP Liens.**

(a)      As security for the DIP Obligations, effective and automatically and properly perfected upon the date of the Interim Order, and subject and subordinate to the Carve

Out, as set forth more fully in this Final Order, the DIP Agents, for the benefit of the DIP Secured

Parties, were, by the Interim Order, and hereby are granted (without the necessity of the execution

by the DIP Loan Parties or the filing or recordation of mortgages, security agreements, lockbox or

control agreements, financing statements, or any other instruments or otherwise by the DIP Agents

or the DIP Lenders) valid, binding, enforceable, non-avoidable, and automatically and properly

perfected liens and security interests (as applicable, for those liens on the DIP Priority Collateral,

the "Senior DIP Liens" or, for those liens on the Other DIP Collateral, the "Junior DIP Liens," and

collectively, the "DIP Liens") in the DIP Collateral (as defined below), as collateral security for

the prompt and complete performance and payment when due (whether at the stated maturity, by

acceleration or otherwise) of all DIP Obligations, which DIP Liens shall have the following

relative rank and priority:

(1)    *Senior DIP Liens*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected first priority senior security interest in and lien upon all of the DIP Loan Parties' right, title and interest in, to, and under (x) the DIP Proceeds Account (as defined in the DIP Credit Agreement) (including all cash and cash equivalents held therein, and proceeds disbursed in contravention of the DIP Credit Agreement) and (y) all claims and causes of action arising under chapter 5 of the Bankruptcy Code (excluding section 549 of the Bankruptcy Code), whether pursuant to federal law or applicable state law, of the DIP Loan Parties or their estates (collectively, the "Avoidance Actions"), and the proceeds thereof or judgments therefrom, that, in the case of this clause (y), are not Prepetition Collateral or otherwise subject to valid, perfected and non-avoidable pre-petition liens (collectively, the "DIP Priority Collateral"), subject and subordinate only to the Carve Out; and

(2)    *Junior DIP Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected junior security interest in and lien upon all of the DIP Loan Parties' right, title and interest in, to, and under all Prepetition Collateral (other than any Excluded Assets (as defined in the DIP Credit Agreement) and the DIP Priority Collateral), whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents and profits of the foregoing ("Other DIP Collateral," and together with the DIP Priority Collateral, the "DIP Collateral"), subject and subordinate to (i) the Carve Out, (ii) the Permitted Prior Senior Liens, (iii) the Prepetition Liens, and (iv) the Adequate Protection Liens (as defined below).

(b)    For the avoidance of doubt, and subject to the lien priority set forth above, the term "DIP Collateral" shall include all assets and properties of each of the DIP Loan Parties of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, any of the DIP Loan Parties, whether prior to or after the Petition Date, whether owned or consigned by or to, or leased from or to, the DIP Loan Parties, and wherever located, in each case, to the extent such assets and property constitute (i) all Prepetition Collateral, (ii) all "DIP Collateral" as defined in the DIP Loan Documents, and (iii) all proceeds, products, offspring and profits of each of the foregoing and all accessions to, substitutions and replacements for, each of the foregoing, including any and all proceeds of any insurance, indemnity, warranty or guaranty payable to any Debtor from time to time with respect to any of the foregoing.

(c)    Notwithstanding anything contained herein or in any of the DIP Loan Documents to the contrary (subject to the Carve Out in all cases and, in the case of the DIP Junior Liens, subject also to the Adequate Protection Liens, Permitted Prior Senior Liens and the Prepetition Liens), the DIP Liens and the DIP Superpriority Claims (as defined below) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the DIP Loan Parties' chapter 11 cases or any Successor Cases, and shall be valid and enforceable against the DIP Loan Parties, their estates, any trustee or any other estate representative appointed or elected in the DIP Loan Parties' chapter 11 cases or any Successor Cases and/or upon the dismissal of any of the DIP Loan Parties' chapter 11 cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code or otherwise, or (C) any intercompany

23

or affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

(d)     Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent, or the payment of any fees or obligations to, any governmental entity or non-governmental entity in order for the DIP Loan Parties to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or DIP Collateral, is and shall hereby be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the DIP Liens or Adequate Protection Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any DIP Loan Parties, in favor of the DIP Secured Parties or the Prepetition Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order.

6.     **DIP Superpriority Claims.** Subject to the Adequate Protection Claims (as defined below) and effective as of entry of the Interim Order, the DIP Agents (on behalf of the DIP Secured Parties) were granted, pursuant to section 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the DIP Loan Parties' chapter 11 cases and any Successor Cases thereof on account of the DIP Obligations, with priority over any and all administrative expenses of the kind that are specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, 1114 or any other provisions of the Bankruptcy Code and any other claims against the DIP Loan Parties (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code. The DIP Superpriority Claims exist against each of the

DIP Loan Parties, on a joint and several basis. Notwithstanding anything contained herein or in any of the DIP Loan Documents to the contrary, the DIP Superpriority Claims shall, at all times be (x) junior to the Carve Out, (y) junior to the Adequate Protection Claims, and (z) senior to any and all other administrative expense claims or other claims against the DIP Loan Parties or their estates, in the DIP Loan Parties' chapter 11 cases and any Successor Cases.

7.      **Use of Proceeds of the DIP Facility and Cash Collateral.** The use of Prepetition Collateral (including Cash Collateral) was, by the Interim Order, and hereby is authorized and approved on a final basis, in each case, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents, as applicable. From and after the Closing Date and until the earlier of the DIP Termination Date or the Cash Collateral Termination Date (each as defined below), the DIP Loan Parties shall be authorized to use Prepetition Collateral (including Cash Collateral), and shall be permitted to draw upon the DIP Facility and the proceeds thereof, subject, in each case, to the terms and conditions of the DIP Orders and the DIP Loan Documents, and solely to extent in compliance with the Approved Budget (subject to variances permitted under the DIP Credit Agreement), for the following purposes: (i) working capital and general corporate purposes of the DIP Loan Parties and their Subsidiaries (as defined in the DIP Credit Agreement), (ii) to pay obligations arising from or related to the Carve Out, (iii) to pay professional fees in connection with these chapter 11 cases, (iv) to make adequate protection payments expressly required hereunder, and (v) to pay fees and expenses incurred in connection with the transactions contemplated by the DIP Loan Documents. For the avoidance of doubt, none of the Debtors will use any DIP Loans, the proceeds of the DIP Facility or Cash Collateral in a manner or for a purpose other than those consistent with the Approved Budget, the DIP Loan Documents, and this Final Order. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or

their estates outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in the DIP Orders, the DIP Loan Documents, and the Approved Budget. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Final Order and the DIP Loan Documents.

8.    **Disposition of DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) other than in the ordinary course of business without the prior written consent of the DIP Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lenders), except as otherwise provided for in the DIP Loan Documents.

9.    **Adequate Protection.**

(a)    **Adequate Protection for Prepetition CF Credit Facility Secured Parties.** Subject to the challenge rights set forth in paragraph 27 hereof, pursuant to sections 361, 363(e), 364(d) and 507 of the Bankruptcy Code, the Prepetition CF Credit Facility Secured Parties were, by the Interim Order, and hereby are entitled to adequate protection of their interests in all Prepetition CF Credit Facility Collateral, including the Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition CF Credit Facility Secured Parties' interests in the Prepetition CF Credit Facility Collateral (including Cash Collateral) from and after the Petition Date:

> (i)    **Adequate Protection Lien.** The Prepetition CF Credit Facility Agent, on behalf the Prepetition CF Credit Facility Secured Parties, was granted, upon the date of the Interim Order, a valid, binding, enforceable and automatically perfected postpetition lien on all assets of the Debtors to the extent of any Diminution in Value of the Prepetition CF Credit Facility Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) (except as specified in the proviso below) (the "CF Adequate Protection Lien"),

which CF Adequate Protection Lien shall be subject to the Prepetition Intercreditor Agreement in all cases and (x) with respect to the DIP Priority Collateral, shall be subject and subordinate only to (A) the Carve Out, (B) the Senior DIP Liens, and (C) the Permitted Prior Senior Liens, and (y) with respect to all Other DIP Collateral, shall be subject and subordinate only to (A) the Carve Out and (B) the Permitted Prior Senior Liens; *provided that* the CF Adequate Protection Liens shall not encumber the Avoidance Actions and the proceeds thereof or judgments therefrom that are not subject to valid, perfected and non-avoidable prepetition liens.

(ii)     **Adequate Protection Claim.** The Prepetition CF Credit Facility Agent, on behalf of the Prepetition CF Credit Facility Secured Parties, is hereby granted an allowed superpriority administrative expense claim, to the extent of any Diminution in Value of the Prepetition CF Credit Facility Secured Parties' interests in the Prepetition Collateral (including Cash Collateral), as provided for in section 507(b) of the Bankruptcy Code (the "CF Adequate Protection Claim"), in each of these chapter 11 cases, which shall be subject to the Prepetition Intercreditor Agreement in all cases, and which shall be (A) junior to the Carve Out and (B) otherwise senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code. Except to the extent expressly set forth in the DIP Orders, or the DIP Loan Documents, the Prepetition CF Credit Facility Secured Parties, shall not receive or retain any payments, property or other amounts in respect of the CF Adequate Protection Claim from the DIP Priority Collateral unless and until the Carve Out, the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments (as defined herein) have been terminated.

(b)     **Additional Adequate Protection for Prepetition CF Credit Facility Secured Parties.** Subject to the challenge rights set forth in paragraph 27 hereof, as additional adequate protection of the Prepetition CF Credit Facility Secured Parties' security interests in the Prepetition CF Credit Facility Collateral, including the Cash Collateral, the Debtors were, by the Interim Order, and hereby are authorized to provide adequate protection in the form of the following:

(i)     **Postpetition Interest Payments**. From and after entry of the Interim Order, the Prepetition CF Credit Facility Agent, on behalf of the Prepetition CF Credit Facility Secured Parties, shall receive current cash payment during these chapter 11 cases of all accrued interest on the Prepetition CF Credit Facility Obligations under the Prepetition CF Credit Agreement as such interest becomes due and payable and as set forth in the following sentence, at the applicable contractual non-default rate thereunder and in the

amounts specified in the Prepetition CF Credit Agreement. The first such interest payment date shall be April 30, 2020, and thereafter, the last Business Day of every calendar month.

(ii)     **Fees and Expenses.** Pursuant to sections 361, 363(e), 364(d), and 507 of the Bankruptcy Code, as additional adequate protection, the DIP Loan Parties shall pay all reasonable and documented fees, costs and expenses of (A) the Prepetition CF Credit Facility Lenders, including the prepetition and postpetition fees and expenses of (i) Milbank LLP, (ii) Houlihan Lokey, Inc., and (iii) any local legal counsel retained by, or on behalf of, the Prepetition CF Credit Facility Lenders and (B) the Prepetition CF Credit Facility Agent, including the prepetition and postpetition fees and expenses of Cravath Swaine & Moore LLP (the "Prepetition CF Credit Facility Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 10 of this Final Order.

(iii)     **Financial Reporting**. The DIP Loan Parties shall provide the Prepetition CF Credit Facility Agent, on behalf of the Prepetition CF Credit Facility Secured Parties, and Houlihan Lokey, Inc. with (A) (I) copies of the DIP Reporting (as defined below) and (II) a copy of Approved Budget, contemporaneously with delivery thereof to the DIP Secured Parties (each, on a confidential basis), and in each case, in accordance with paragraph 12 hereof, and (B) otherwise continue with financial and other reporting substantially in compliance with the Prepetition Loan Documents (only with respect to those requirements that fall due after the Petition Date).

(c)     **Adequate Protection for Prepetition ABL Credit Facility Secured Parties.**

Subject to the challenge rights set forth in paragraph 27 hereof, pursuant to sections 361, 363(e), 364(d), and 507 of the Bankruptcy Code, the Prepetition ABL Credit Facility Secured Parties were, by the Interim Order, and hereby are entitled to adequate protection of their interests in all Prepetition ABL Credit Facility Collateral, including Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition ABL Credit Facility Secured Parties' interests in the Prepetition ABL Credit Facility Collateral (including Cash Collateral) from and after the Petition Date:

(i)     **Adequate Protection Lien.** The Prepetition ABL Credit Facility Agent, on behalf the Prepetition ABL Credit Facility Secured Parties, was granted upon the date of the Interim Order, and is hereby granted, a valid, binding, enforceable and automatically perfected postpetition lien on all assets of the Debtors to the extent of any Diminution in Value of the Prepetition ABL Credit Facility Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) (except as specified in the proviso below) (the "ABL Adequate Protection Lien," and together with the CF Adequate Protection Lien, the "Adequate Protection Liens"), which ABL Adequate Protection Lien shall be subject to the

Prepetition Intercreditor Agreement in all cases and (x) with respect to the DIP Priority Collateral, shall be subject and subordinate only to (A) the Carve Out, (B) the Senior DIP Liens, and (C) the Permitted Prior Senior Liens, and (y) with respect to all Other DIP Collateral, shall be subject and subordinate only to (A) the Carve Out and (B) the Permitted Prior Senior Liens; *provided that* the ABL Adequate Protection Liens shall not encumber the Avoidance Actions and the proceeds thereof or judgments therefrom that are not subject to valid, perfected and non-avoidable prepetition liens.

(ii)    **Adequate Protection Claim.** The Prepetition ABL Credit Facility Agent, on behalf of the Prepetition ABL Credit Facility Secured Parties, was granted upon the date of the Interim Order, and is hereby granted, an allowed superpriority administrative expense claim, to the extent of any Diminution in Value of the Prepetition ABL Credit Facility Secured Parties' interests in the Prepetition Collateral (including Cash Collateral), as provided for in section 507(b) of the Bankruptcy Code (the "ABL Adequate Protection Claim," and together with the CF Adequate Protection Claim, the "Adequate Protection Claims"), in each of these chapter 11 cases, which shall be subject to the Prepetition Intercreditor Agreement in all cases, and which shall be (A) junior to the Carve Out, and (B) otherwise senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code. Except to the extent expressly set forth in the DIP Orders, or the DIP Loan Documents, the Prepetition ABL Credit Facility Secured Parties, shall not receive or retain any payments, property or other amounts in respect of the ABL Adequate Protection Claim from the DIP Priority Collateral unless and until the Carve Out, the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(d)    **Additional Adequate Protection for Prepetition ABL Credit Facility Secured Parties.** Subject to the challenge rights set forth in paragraph 27 hereof, as additional adequate protection of the Prepetition ABL Credit Facility Secured Parties' security interests in the Prepetition ABL Credit Facility Collateral, including the Cash Collateral, the Debtors were, by the Interim Order, and hereby are authorized to provide adequate protection in the form of the following:

(i)    **Postpetition Interest Payments**. From and after entry of the Interim Order, the Prepetition ABL Credit Facility Agent, on behalf of the Prepetition ABL Credit Facility Secured Parties, shall receive current cash payment during these chapter 11 cases of all accrued but unpaid prepetition interest and postpetition interest on the Prepetition ABL Credit Facility Obligations under the Prepetition ABL Credit Agreement as such interest becomes due and payable and as set forth in the following sentence, at the applicable contractual non-default rate thereunder and in the amounts specified in the Prepetition ABL

Credit Agreement. The first such interest payment date shall be April 30, 2020, and thereafter, the last Business Day of every calendar month.

(ii)     **Fees and Expenses.** Pursuant to sections 361, 363(e), 364(d), and 507 of the Bankruptcy Code, as additional adequate protection, the DIP Loan Parties shall pay all reasonable and documented fees, costs and expenses of (A) the Prepetition ABL Credit Facility Lenders, and (B) the Prepetition ABL Credit Facility Agent, including the prepetition and postpetition fees and expenses of (i) Winston & Strawn LLP, (ii) FTI Consulting, Inc., and (iii) any local legal counsel retained by, or on behalf of, the Prepetition ABL Credit Facility Agent (the "Prepetition ABL Credit Facility Adequate Protection Fees and Expenses," and together with Prepetition CF Credit Facility Adequate Protection Fees and Expenses, the "Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 10 of this Final Order.

(iii)     **Financial Reporting**. The DIP Loan Parties shall provide the Prepetition ABL Credit Facility Agent, on behalf of the Prepetition ABL Credit Facility Secured Parties, and FTI Consulting, Inc. with (A) (I) copies of the DIP Reporting, (II) a copy of Approved Budget, contemporaneously with delivery thereof to the DIP Secured Parties (each, on a confidential basis), and in each case, in accordance with paragraph 12 hereof, and (III) copies of financial reporting regarding the Debtors' accounts receivable and cash position on a weekly basis, and (B) otherwise continue with financial and other reporting, including monthly borrowing base reporting, substantially in compliance with the Prepetition Loan Documents.

(iv)     **Borrowing Base Compliance**. The Debtors and the Prepetition ABL Credit Facility Agent shall continue to calculate the Borrowing Base (as defined in the Prepetition ABL Credit Agreement) in the manner (*i.e.*, as to, *inter alia*, eligibility standards and methodology for establishing reserves) as the Borrowing Base was calculated as of the Petition Date. If, at any time following the entry of the Interim Order, the Aggregate Exposure (as defined in the Prepetition ABL Credit Agreement) (excluding the amount of any cash collateralized Letters of Credit (as defined in the Prepetition ABL Credit Agreement), to the extent otherwise included in Aggregate Exposure) exceeds the Borrowing Base Threshold (as defined below) (any such excess, a "Borrowing Base Deficiency"), the Debtors shall, concurrently with delivery of such Borrowing Base Certificate (as defined below) (and in any event no later than the close of business on the next Business Day), make an immediate cash payment to the Prepetition ABL Credit Facility Agent, for the benefit of the Prepetition ABL Credit Facility Secured Parties, in an amount equal to such Borrowing Base Deficiency, which payment shall be deemed a permanent repayment of the principal amount of the Prepetition ABL Credit Facility Obligations in the amount of such payment. Notwithstanding any automatic stay arising as a result of these chapter 11 cases, to the extent the payment of any Borrowing Base Deficiency is not made in accordance with the terms hereof, the consent of the ABL Credit Facility Secured Parties to usage of their Cash Collateral shall be suspended until such time as such Borrowing Base Deficiency shall have been paid. The "Borrowing Base Threshold" shall mean an amount equal to (i) the Borrowing Base from time to time (determined in accordance with the Prepetition ABL Credit Agreement, including eligibility and availability criteria and other terms, including Availability Reserves (it being agreed that

no additional Availability Reserves shall be imposed after the Petition Date arising from circumstances known as of the Petition Date)) minus (ii) $2,500,000 minus (iii) the Carve Out to the extent under this clause (iii) not cash collateralized or otherwise reserved for.

10.    **Adequate Protection Fees and Expenses**. Subject to the review procedures set forth in this paragraph 10, payment of all Adequate Protection Fees and Expenses may be in summary form only (and shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "Fee Notice Parties"). If no objection to payment of the requested fees and expenses is made, in writing by any of the Fee Notice Parties within ten (10) business days after delivery of such invoices (the "Fee Objection Period"), then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any case, within ten (10) business days. If an objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Subject to the challenge rights set forth in paragraph 27 hereof, payments of any amounts set forth in this paragraph 10 shall not be subject to recharacterization, subordination or disgorgement except as expressly provided in the preceding sentence. Notwithstanding the foregoing, but subject to the challenge rights set forth in paragraph 27 hereof, the DIP Loan Parties were, by the Interim Order, and hereby are authorized, without further notice or hearing, to pay on the date on which the Interim Financing was initially funded all reasonable

and documented fees, costs, and out-of-pocket expenses of the Prepetition Secured Parties incurred on or prior to such date to the extent otherwise payable in accordance with the terms of the Prepetition Loan Documents.

11. **Reservation of Rights of Prepetition Secured Parties.**

(a)      Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition CF Credit Facility Secured Parties; *provided* that the Prepetition CF Credit Facility Agent, acting on its own behalf or at the direction of the Prepetition CF Credit Facility Secured Parties may request further or different adequate protection, and the Debtors, the DIP Secured Parties, or any other party in interest may contest any such request.

(b)      Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition ABL Credit Facility Secured Parties; *provided* that the Prepetition ABL Credit Facility Agent, acting on its own behalf or at the direction of the Prepetition ABL Credit Facility Secured Parties may request further or different adequate protection, and the Debtors, the DIP Secured Parties, or any other party in interest may contest any such request.

(c)      For all adequate protection and stay relief granted in the DIP Orders, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of the DIP Orders.

12.     **Approved Budget.** All borrowings under the DIP Facility, and the use of Cash Collateral, shall at all times comply with the Approved Budget (subject to Permitted Variances) and the DIP Loan Documents. The Debtors shall (a) provide copies of the reporting required under Sections 5.04(c), (e), (f), and (g) of the DIP Credit Agreement as and when required under the DIP Credit Agreement (the "<u>DIP Reporting</u>") and (b) comply with all financial or other reporting, lender or advisor call, budget, variance reporting and testing requirements as set forth in the DIP Loan Documents. On or before 12:00 p.m., prevailing Eastern Time, on the Wednesday of each fourth (4th) calendar week ending after the Petition Date, the Debtors shall deliver to the DIP Agents (with a copy to the Prepetition Agents), the following, as described in the DIP Loan Documents, updates to the Initial Budget (or the previously supplemented Approved Budget, as the case may be), covering the 13-week period that commences with the beginning of such week in which the supplemental budget is delivered, consistent with the form and level of detail set forth in the Initial Budget and otherwise in form and substance to the Required Lenders (as defined in the DIP Credit Agreement, the "<u>Required DIP Lenders</u>") in their reasonable discretion (each such supplemental budget, an "<u>Updated Budget</u>"), and once so approved by the Required DIP Lenders, in their reasonable discretion, such Updated Budget shall constitute the then-approved "Approved Budget"; *provided* that unless and until the Required DIP Lenders approve such Updated Budget, the then-current Approved Budget shall remain in effect, effective as of the beginning of the week in which it was delivered.

13.     **Modification of Automatic Stay.** Subject to paragraph 21 hereof, the automatic stay imposed by section 362(a) of the Bankruptcy Code was, by the Interim Order, and hereby is modified as necessary to permit: (a) the DIP Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may reasonably request,

to assure the perfection and priority of the DIP Liens and the DIP Superpriority Claims; (b) the DIP Loan Parties to incur all liabilities and obligations, including all the DIP Obligations, to the DIP Secured Parties as contemplated under the DIP Orders and the DIP Loan Documents, and to perform under the DIP Loan Documents any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable DIP Loan Parties under the DIP Loan Documents and any transactions contemplated therein or pursuant to the DIP Orders, as applicable; (c) the DIP Loan Parties to take all appropriate action to grant the Adequate Protection Liens and the Adequate Protection Claims set forth herein, and to take all appropriate action (including such action as the Prepetition Secured Parties may reasonably request) to ensure that the Adequate Protection Liens granted thereunder were perfected upon the date of the Interim Order and maintain the priority set forth herein and therein; (d) the DIP Loan Parties to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and the DIP Orders, as applicable; (e) the DIP Secured Parties and the applicable Prepetition Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and the DIP Orders, as applicable; (f) subject to paragraphs 20 and 21 hereof, the DIP Secured Parties and Prepetition Secured Parties to exercise, upon the occurrence and during the continuance of any DIP Termination Event or Cash Collateral Termination Event (each as defined below), as applicable, all rights and remedies provided for in the DIP Loan Documents and this Final Order and take any or all actions provided therein and herein; and (g) the implementation and exercise of all of the terms, rights, benefits, privileges, remedies and provisions of this Final Order and the DIP Loan Documents, in each case, without further notice, motion or application to, or order of this Court.

14.      **Perfection of DIP Liens and Adequate Protection Liens.** The DIP Orders are
sufficient and conclusive evidence of the validity, perfection and priority of all liens granted
therein and herein, including, without limitation, the DIP Liens and the Adequate Protection Liens,
without the necessity of execution, filing or recording any financing statement, mortgage, notice
or other instrument or document that may otherwise be required under the law or regulation of any
jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into
any deposit account control agreement) to validate or perfect (in accordance with applicable law)
such liens, or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities
granted herein. Notwithstanding the foregoing, the DIP Agents and the Prepetition Agents, without
any further consent of any party, were, by the Interim Order, and hereby are authorized to execute,
file or record (and the DIP Agents and Prepetition Agents may require the execution, filing or
recording), as each, in its sole discretion deems necessary, such financing statements, notices of
lien, and other similar documents to enable the DIP Agents and the Prepetition Agents to further
validate, perfect, preserve and enforce the applicable DIP Liens or other liens and security interests
granted hereunder, perfect in accordance with applicable law or to otherwise evidence the
applicable DIP Liens and/or the applicable Adequate Protection Liens, as applicable, and all such
financing statements, notices, and other documents shall be deemed to have been filed or recorded
as of the Petition Date; *provided* that no such filing or recordation shall be necessary or required
in order to create or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors were,
by the Interim Order, and hereby are authorized to execute and deliver promptly upon demand to
the DIP Agents and the Prepetition Agents all such financing statements, notices, and other
documents as the DIP Agents and the Prepetition Agents may reasonably request. The DIP Agents
and the Prepetition Agents, each in its discretion, may file a photocopy of this Final Order as a

financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments. To the extent that any Prepetition Agent is a secured party under any account control agreement, listed as an additional insured, loss payee under any of the Debtors' insurance policies or is the secured party under any loan document, financing statement, deed of trust, mortgage or other instrument or document which may otherwise be required under the law of any jurisdiction to validate, attach, perfect or prioritize liens (any such instrument or document, a "Security Document"), the DIP Agents shall also be deemed to be the secured parties under each such Security Document, and shall have all the rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received subject to the Carve Out and in accordance with the terms of the DIP Orders, as applicable, and the other DIP Loan Documents. The Prepetition Agents shall serve as agent for the DIP Agents solely for the purposes of perfecting its security interests in and liens on all DIP Collateral that is of a type such that perfection of a security interest therein (but for the entry of the Interim Order) may be accomplished only by possession or control by a secured party.

15.    **Protection of DIP Lenders' Rights**. Except as otherwise expressly provided herein, so long as there are any DIP Obligations outstanding under the DIP Loan Documents or the DIP Lenders have any outstanding Commitments or Loans (each, as defined in the DIP Loan Documents), the Prepetition Secured Parties shall (with respect to the DIP Priority Collateral): (a) have no right to, and take no action to, foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Loan Documents and/or the DIP Orders or otherwise seek or exercise any enforcement rights or remedies against any DIP Priority Collateral or in connection with the debt and obligations underlying the Prepetition Loan Documents or the

Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any event of default under any of the Prepetition Loan Documents, (b) be deemed to have consented to any release of DIP Priority Collateral authorized under the DIP Loan Documents, (c) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, memoranda of lease, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Priority Collateral unless, solely as to this underline(c), the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to the DIP Loan Documents and/or the DIP Orders, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing.

16.        **Proceeds of Subsequent Financing.** If at any time prior to the indefeasible payment in full in cash of all of the DIP Obligations and the Prepetition Secured Obligations, the termination of the DIP Secured Parties' obligations to extend credit under the DIP Facility and this Final Order (including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates), and the satisfaction of the DIP Superpriority Claims and the Adequate Protection Claims, either the DIP Loan Parties, the DIP Loan Parties' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed in any of the DIP Loan Parties' chapter 11 cases or any Successor Cases thereof, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents then, unless otherwise agreed by the DIP Lenders in their discretion (i) after satisfaction of the Carve Out, all of the cash proceeds derived from such credit or debt and all DIP Priority Collateral shall immediately be turned over to the DIP Agents for further distribution to the applicable DIP Secured Parties on account of their applicable

DIP Obligations pursuant to the applicable DIP Loan Documents and (ii) after satisfaction of the Carve Out and payment in full of all DIP Obligations in cash, all the cash proceeds derived from such credit or debt and all DIP Priority Collateral shall immediately be turned over to the Prepetition Agents, for further distribution to the applicable Prepetition Secured Parties pursuant to the applicable Prepetition Loan Documents, as applicable.

17.     **Financial Reporting; Monitoring of Collateral.** Without limitation to the requirements of the DIP Loan Documents, the DIP Loan Parties shall (a) provide to the DIP Agents and the DIP Lenders (and, in each case, their respective consultants, advisors and professionals) or, if contemplated by the DIP Loan Documents, the financial advisor to the DIP Lenders, (i) all financial information required under the DIP Loan Documents, and (ii) reasonable access to the Debtors' books and records, assets and properties, for purposes of monitoring the Debtors' businesses and the value of the DIP Collateral, and shall be permitted to conduct, at their discretion and at the DIP Loan Parties' cost and expense, field audits, collateral examinations and inventory appraisals in respect of the DIP Collateral. The DIP Loan Parties shall also provide such reports and information required to be provided in the DIP Loan Documents, and such other reports and information as may be reasonably requested by the Prepetition Secured Parties (and their respective professionals), and reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors hereby authorize their accountants, attorneys, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Agents, the DIP Lenders and the Prepetition Agents (and, in each case, their respective consultants, advisors and professionals) all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

18.    **Milestones**. It is a condition to the DIP Facility and to the use of Cash Collateral that the Debtors shall comply with those certain case milestones set forth in the DIP Credit Agreement (the "<u>Milestones</u>"). The failure to comply with any Milestone shall constitute an Event of Default in accordance with the terms of the DIP Credit Agreement and this Final Order.

19.    **Maintenance of DIP Collateral.**

(a)    The Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents and Prepetition Loan Documents. Upon entry of the Interim Order and to the fullest extent provided by applicable law, the DIP Agents and Prepetition Secured Parties were, and were deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the DIP Loan Parties that in any way relates to the DIP Collateral.

(b)    The Debtors shall also maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and any order that may be entered by the Court in accordance with this Final Order, which has first been agreed to by the DIP Lenders.

20.    **Termination Events.** The occurrence of an "Event of Default" under and as defined in the DIP Credit Agreement shall constitute a "DIP Termination Event" under this Final Order (each a "<u>DIP Termination Event</u>," and the date upon which such DIP Termination Event occurs, the "<u>DIP Termination Date</u>"), unless waived in writing by the Required DIP Lenders. Notwithstanding anything contained herein, the Debtors' authorization to use Cash Collateral under this Final Order shall terminate (the "<u>Cash Collateral Termination Date</u>") upon the earliest to occur of (each of the following, a "<u>Cash Collateral Termination Event</u>"):  (i) the first (1st) business day following the Debtors' withdrawal of the plan of reorganization on file as of the entry of the Interim Order or modification of such plan in any manner that does not provide for the

39

indefeasible repayment in full in cash of the Prepetition ABL Credit Facility Obligations upon the effective date of such plan; (ii) five (5) calendar days following the Debtors' receipt of a written notice from the Prepetition ABL Credit Facility Agent of the Debtors' failure to make a payment to or for the benefit of the Prepetition ABL Secured Parties otherwise required under the DIP Orders to the extent that such nonpayment has not been remedied within such five day period; (iii) the date the Court enters an order dismissing any of these chapter 11 cases; and (iv) the date the Court enters an order converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code.

21.    **Exercise of Remedies.**

(a)    Immediately upon the occurrence and during the continuation of a DIP Termination Event, the DIP Agent, at the direction of the Required DIP Lenders, shall (in the case of a DIP Termination Event) be permitted to, and any automatic stay, whether arising under section 362 of the Bankruptcy Code or otherwise, was, by the Interim Order, and hereby is modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Agent to, upon the delivery of written notice (which may include electronic mail) to the DIP Remedies Notice Parties (as defined below): (i) declare all DIP Obligations owing under the applicable DIP Facility to be immediately due and payable; (ii) terminate, reduce or restrict any commitment to extend credit to the DIP Loan Parties under the DIP Facility (to the extent any such commitment remains); (iii) terminate the DIP Facility and the DIP Loan Documents as to any future liability or obligation thereunder, but without affecting the DIP Liens or the DIP Obligations; (iv) terminate and/or revoke the Debtors' right, if any, under this Final Order and the DIP Loan Documents to use any Cash Collateral (subject to paragraph 21(b)); (v) invoke the right to charge interest at the default rate under the DIP Facility; (vi) freeze monies or balances in the

DIP Loan Parties' accounts; (vii) otherwise enforce any and all rights against the DIP Priority Collateral in the possession of the DIP Agent, including, without limitation, disposition of the DIP Priority Collateral solely for application towards the Carve Out and the DIP Obligations in accordance with their respective priorities; and (viii) take any other actions or exercise any other rights or remedies with respect to the DIP Priority Collateral permitted under this Final Order, the DIP Loan Documents, or applicable law; *provided* that prior to the exercise of any right in clauses (i) though (viii) of this paragraph, the DIP Agent shall be required to provide five (5) calendar days' written notice to counsel to the Debtors, counsel to the Prepetition Agents, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "<u>DIP Remedies Notice Parties</u>") of the DIP Agents' intent to exercise its rights and remedies (the "<u>DIP Remedies Notice Period</u>").

(b)    Unless during such DIP Remedies Notice Period the Court determines that a DIP Termination Event has not occurred, the DIP Agents shall be deemed to have received relief from the automatic stay, and may foreclose on all or any portion of the DIP Priority Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Priority Collateral, or otherwise exercise all rights and remedies available against the DIP Priority Collateral permitted by applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise (in each case, subject to paragraph 21(c) hereof); *provided that* in the event that a party challenges the DIP Agents' assertion that a DIP Termination Event has occurred and the Court is unavailable for a hearing during the DIP Remedies Notice Period, the automatic stay shall remain in effect until the Court has an opportunity to rule on such challenge.

(c)     The Debtors (i) shall reasonably cooperate with the DIP Agents in its exercise of rights and remedies, whether against DIP Priority Collateral or otherwise, and (ii) unless the Court orders otherwise, may not contest or challenge the exercise of any such rights or remedies other than to dispute whether a DIP Termination Event has in fact occurred; *provided* that the DIP Agents shall not object to a request by the Debtors for an expedited hearing before the Court to contest whether a DIP Termination Event has in fact occurred. Notwithstanding anything to the contrary set forth in this paragraph 21, during the DIP Remedies Notice Period, the Debtors may use Cash Collateral to pay only the following amounts and expenses: (i) the Carve Out and (ii) amounts that the Debtors have determined in good faith are in the ordinary course, are critical to the preservation of the Debtors and their estates and have been approved in advance in writing by the Required DIP Lenders, as to the applicable budget.

(d)     Immediately upon the occurrence and during the continuation of a Cash Collateral Termination Event, the Prepetition ABL Credit Facility Agent shall (in the case of a Cash Collateral Termination Event) be permitted, and any automatic stay, whether arising under section 362 of the Bankruptcy Code or otherwise, was, by the Interim Order, and hereby is modified, without further notice to, hearing of, or order from this Court, to the extent necessary, to permit the Prepetition ABL Credit Facility Agent to, upon the delivery of written notice (which may include electronic mail) to the Cash Collateral Remedies Notice Parties (as defined below) terminate and/or revoke the Debtors' right, if any, under the DIP Orders to use any Cash Collateral (subject to paragraph 21(e); *provided* that prior to the exercise of any right in this paragraph, the Prepetition ABL Credit Facility Agent shall be required to provide five (5) calendar days' written notice (which shall run concurrently with any notice required in paragraph 20 above) to counsel to the Debtors, counsel to the DIP Lenders, counsel to the Prepetition CF Credit Facility Agent,

counsel to any Official Committee (if appointed), and the U.S. Trustee (the "Cash Collateral Remedies Notice Parties") of the Prepetition ABL Credit Facility Agent's intent to exercise its rights and remedies (the "Cash Collateral Remedies Notice Period").

(e)        Unless during such Cash Collateral Remedies Notice Period the Court determines that a Cash Collateral Termination Event has not occurred, the Prepetition ABL Credit Facility Agent shall be deemed to have received relief from the automatic stay, and may terminate and/or revoke the Debtors' right, if any, under the DIP Orders to use any Cash Collateral; *provided that* in the event that a party challenges the Prepetition ABL Credit Facility Agent's assertion that a Cash Collateral Termination Event has occurred and the Court is unavailable for a hearing during the Cash Collateral Remedies Notice Period, the automatic stay shall remain in effect until the Court has an opportunity to rule on such challenge.

(f)        Notwithstanding anything to the contrary set forth in this paragraph 21, during the Cash Collateral Remedies Notice Period, the Debtors may use Cash Collateral to pay only the following amounts and expenses: (i) the Carve Out and (ii) amounts that the Debtors have determined in good faith are in the ordinary course, are critical to the preservation of the Debtors and their estates and have been approved in advance in writing by the Prepetition ABL Credit Facility Agent, as to the applicable budget.

22.        **DIP Fees and Expenses.** The DIP Loan Parties were, by the Interim Order, and hereby are authorized to pay, in cash and on a current basis, all DIP Fees and Expenses, as and when due under the DIP Loan Documents and this Final Order, whether or not the transactions contemplated hereby are consummated. Payment of all DIP Fees and Expenses shall not be subject to review or allowance by the Court. The invoices for such DIP Fees and Expenses may be in summary form only (which shall not be required to contain time entries and which may be redacted

or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, with a copy to the Fee Notice Parties. If no objection to payment of the requested fees and expenses is made, in writing by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any case, within five (5) business days. If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Payments of any amounts set forth in this paragraph 22 shall not be subject to recharacterization, subordination or disgorgement except as expressly provided in the preceding sentence. Notwithstanding the foregoing, the DIP Loan Parties were, by the Interim Order, and hereby are authorized, without further notice or hearing, to pay on the date on which the Interim Financing was initially funded all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agent and each DIP Lender incurred on or prior to such date to the extent otherwise payable in accordance with the terms of the DIP Loan Documents.

23.      **Indemnification.** The DIP Loan Parties shall jointly and severally indemnify and hold harmless the DIP Agents, each DIP Secured Party, and each of their respective officers, directors, employees, parents, subsidiaries, affiliates, agents, advisors, attorneys and

representatives (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities, costs and expenses (including, without limitation, fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party, in each case, arising out of or in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense with respect thereto, arising out of or in connection with or relating to the DIP Facility, the DIP Liens, the DIP Loan Documents or the transactions contemplated thereby, or any use made or proposed to be made with the proceeds of the DIP Facility, whether or not such investigation, litigation or proceeding is brought by any DIP Loan Party or any of its subsidiaries, any shareholders or creditors of the foregoing, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby or under the DIP Loan Documents are consummated, except to the extent such claim, damage, loss, liability or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from such Indemnified Party's gross negligence, bad faith, or willful misconduct. Subject to paragraph 10 of this Final Order, the Debtors are authorized indemnify the Prepetition ABL Secured Parties and to pay the costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Secured Parties in connection therewith as and when they arise, without further order of this Court; *provided* that (i) any such indemnification claims shall be subject to the terms of the Prepetition ABL Credit Documents (including with respect to application of proceeds), (ii) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 27 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).

24.      **Proofs of Claim.** The DIP Agents, the DIP Secured Parties, and the Prepetition Secured Parties shall not be required to file proofs of claim in any of these chapter 11 cases or any of the Successor Cases for any claim allowed herein or therein in respect of the Prepetition Secured Obligations. Any order entered by the Court establishing a bar date in any of these chapter 11 cases or any Successor Cases shall not apply to the DIP Secured Parties or the Prepetition Secured Parties; *provided* that notwithstanding any order entered by the Court establishing a bar date in any of these chapter 11 cases or any Successor Cases to the contrary, the DIP Agents, on behalf of the DIP Secured Parties, and the Prepetition Agents, on behalf of the Prepetition Secured Parties, may (but are not required) in their discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of these chapter 11 cases or any Successor Cases for any claim allowed herein, and any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor. Any proof of claim filed by the DIP Secured Parties or the Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.

25.      **Carve Out.**

(a)      Notwithstanding anything to the contrary in this Final Order, the Debtors' obligations to the DIP Secured Parties and Prepetition Secured Parties and the liens, security interests and superpriority claims granted herein, under the DIP Loan Documents, and/or under the Prepetition Loan Documents, including the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, and the Prepetition Liens, shall be subject in all respects and subordinate to the Carve Out.

(b)      As used in this Final Order, the "Carve Out" means the sum of (i) all fees required

to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of

title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set

forth in (iii) below) ( collectively, the "Statutory Fees"), which Statutory Fees shall not be subject

to any budget; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under

section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii)

to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all

unpaid fees and expenses (excluding any restructuring, sale, success, or other transaction fee of

any investment bankers or financial advisors)[4] of the Debtors, the patient care ombudsman

appointed pursuant to section 333 of the Bankruptcy Code (the "PCO"), or any Official Committee

(the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant

to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), the PCO or

persons or firms retained by the PCO pursuant to section 327, 328, or 333 of the Bankruptcy Code

(together with the PCO, the "PCO Professionals"), or persons or firms retained by the Official

Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee

Professionals,"), and together with the Debtor Professionals and the PCO Professionals, the

"Professional Persons") at any time before or on the second (2nd) business day following delivery

by the DIP Agents of a Carve Out Trigger Notice (as defined below), whether allowed by the Court

prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of

Professional Persons in an aggregate amount not to exceed $4,000,000 incurred after the second

---

[4]      Any such fees due and payable upon consummation of a transaction shall be payable solely from the proceeds
received by the Debtors resulting from such transaction and, provided that the terms and amount of any such fees
shall have been disclosed to the DIP Agent in writing reasonably promptly after the same are agreed to by the
Debtors, such fees shall be paid fee and clear of the DIP Liens.

(2nd) business day following delivery by the DIP Agents of the Carve Out Trigger Notice, to the extent allowed at any time, whether by final order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agents to the Debtors and their counsel, with a copy to the Prepetition Agents and their counsel, the U.S. Trustee, and counsel to the Official Committee, if any, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations stating that the Post-Carve Out Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary in this Final Order, nothing in the Motion or this Final Order shall impair, limit or otherwise affect the ability, if any, of the State of Texas or any subsequently appointed chapter 7 trustee to assert that the Carve Out should be extended to include the actual, necessary costs and expenses of closing any of the Debtors' facilities, including but not limited to any cost or expense incurred in disposing of patient records in accordance with Bankruptcy Code section 351, or in connection with transferring patients from any of the Debtors' facilities to another health care business, as set forth in Bankruptcy Code section § 503(b)(8). The Debtors, each of the Prepetition Secured Parties, the DIP Secured Parties, and any other party in interest reserve the right to oppose any such assertion.

(c)     On or before 7:00 p.m. prevailing Eastern Time, on the Wednesday of each week starting with the first full calendar week after the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred

through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided that* within two (2) business days of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the DIP Agents and Prepetition ABL Credit Facility Agent). If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; *provided that* such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 25(d) below.

(d)     Carve Out Reserves.

(i)     On the day on which a Carve Out Trigger Notice is given by the DIP Agents to the Debtors in accordance with paragraph 25(b) above (the "Termination Declaration Date"), a copy of which Carve Out Trigger Notice shall be given to the Prepetition ABL Credit Facility

Agent, the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of the amounts set forth in clauses (i) through (iii) of the definition of Carve Out set forth above. The Debtors shall deposit and hold such amounts in a segregated account at an institution designated by the DIP Agents, which institution shall be a signatory to a Uniform Depository agreement with the U.S. Trustee, in trust to pay such then unpaid Allowed Professional Fees and Statutory Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.

(ii)    On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account at an institution designated by the DIP Agents in trust to pay such Allowed Professional Fees benefiting from the Post- Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve," and together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.

(iii)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition ABL Credit Facility Agent for the benefit of the Prepetition ABL Credit Facility Lenders unless the funds are (i) identifiable proceeds of a DIP Loan, in which case such funds shall be paid to the DIP Agents, for the benefit of the DIP

Secured Parties, or (ii) identifiable proceeds of Prepetition CF Credit Agreement Facility Collateral, in which case such funds shall be paid to the Prepetition CF Credit Facility Agent, for the benefit of the Prepetition CF Credit Facility Lenders. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition ABL Credit Facility Agent for the benefit of the Prepetition ABL Credit Facility Lenders unless the funds are (i) identifiable proceeds of a DIP Loan, in which case such funds shall be paid to the DIP Agents, for the benefit of the DIP Secured Parties, or (ii) identifiable proceeds of Prepetition CF Credit Agreement Facility Collateral, in which case such funds shall be paid to the Prepetition CF Credit Facility Agent, for the benefit of the Prepetition CF Credit Facility Lenders.

(iv)    Notwithstanding anything to the contrary in the DIP Loan Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 25, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 25, prior to making any payments to the DIP Agents or the Prepetition Agents, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agents and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves as and to the extent set forth herein and to be distributed in accordance with the provisions in (iii) above. Further,

notwithstanding anything to the contrary in this Final Order, (I) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations, (II) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (III) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees or the Statutory Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the other DIP Loan Documents or in any Prepetition Loan Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the DIP Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(e)     Any payment or reimbursement made in respect of any Allowed Professional Fees incurred by any Professional Person at any time before or on the second (2nd) business day following delivery by the DIP Agents of a Carve Out Trigger Notice shall not reduce the Carve Out or the Post-Carve Out Trigger Notice Cap, regardless of the date on which such payment or reimbursement is made. Any payment or reimbursement made in respect of any Allowed Professional Fees incurred by any Professional Person at any time after the second (2nd) business day following delivery by the DIP Agents of a Carve Out Trigger Notice shall permanently reduce the Carve Out and the Post-Carve Out Trigger Notice Cap on a dollar-for-dollar basis.

(f)     None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these chapter 11 cases or any Successor Cases. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition

Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

26. **Limitations on the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, the Carve Out, and Other Funds.** Notwithstanding anything contained in the DIP Loan Documents, this Final Order or any other order of the Court to the contrary, no DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other cash or funds may be used, directly or indirectly, by any of the Debtors, any Official Committee (if appointed), or any trustee or other estate representative appointed in these chapter 11 cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith): (a) to object to, contest, prevent, hinder, delay, or interfere with, in any way, the DIP Secured Parties' or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral, Prepetition Collateral, or Cash Collateral, once a DIP Termination Event or Cash Collateral Termination Event occurs; (b) except to the extent expressly permitted by the terms of the DIP Loan Documents and this Final Order, to use or seek to use Cash Collateral or, to sell, or otherwise dispose of DIP Collateral or Prepetition Collateral, in each case, without the consent of the Required DIP Lenders or Required Lenders under the Prepetition Loan Documents; or (c) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, against any of the Released Parties with respect to any transaction,

occurrence, omission, action or other matter arising under, in connection with or related to this Final Order, the DIP Facility, the DIP Loan Documents, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, or the Prepetition Loan Documents or the transactions contemplated therein or thereby, including, without limitation, (A) any Avoidance Actions, (B) any so-called "lender liability" claims and causes of action, (C) any claim or cause of action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the DIP Loan Documents, the Prepetition Loan Documents, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Claims, or the Prepetition Secured Obligations, (D) any claim or cause of action seeking to challenge, invalidate, modify, set aside, avoid, marshal, subordinate, or recharacterize in whole or in part, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the Prepetition Collateral, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Adequate Protection Claims, or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any of the DIP Secured Parties hereunder or under any of the DIP Loan Documents or the Prepetition Secured Parties under any of the Prepetition Loan Documents (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Secured Parties, or the Prepetition Secured Parties' assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents or Prepetition Loan Documents and the DIP Orders (as applicable)); *provided that* no more than $50,000 may be used for allowed fees and expenses incurred solely by any Official Committee (if appointed) in investigating, but not objecting to, challenging, litigating (including by way of discovery), opposing, or seeking to subordinate or recharacterize the validity,

enforceability, perfection and priority of the Prepetition Liens, the Prepetition Secured Obligations or the Prepetition Loan Documents prior to the Challenge Deadline (as defined below); provided, further, that nothing contained in this paragraph 26 shall prohibit the Debtors from responding to or complying with discovery requests of any Official Committee, in whatever form, made in connection with such investigation or the payment from the DIP Collateral of professional fees related thereto.

       27.      **Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.**

      (a)      The stipulations, admissions, agreements, and releases contained in this Final Order, including, without limitation, in paragraph E of this Final Order (collectively, the "Stipulations"), shall be binding upon the DIP Loan Parties and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the DIP Loan Parties in these chapter 11 cases or any Successor Cases) in all circumstances and for all purposes; *provided that* any chapter 7 or chapter 11 trustee appointed or elected for any of the DIP Loan Parties in these chapter 11 cases or any Successor Cases before the Challenge Deadline (as defined below) shall not be bound by the Stipulations until the Court orders otherwise. The Stipulations shall be binding upon all other parties in interest, (including without limitation, any Official Committee, if appointed) and any other person or entity acting or seeking to act on behalf of the DIP Loan Parties' estates, in all circumstances and for all purposes, unless (1) an Official Committee, if any, or a party in interest (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the Challenge Deadline (as defined below)), has timely and duly filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "Challenge Proceeding") by the Challenge Deadline,

objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Loan Documents, or otherwise asserting or prosecuting any Avoidance Action or any other claim, counterclaim, cause of action, objection, contest, defense or other challenge (a "Challenge") against any of the Prepetition Secured Parties or any of their respective affiliates, subsidiaries, officers, directors, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and the respective successors and assigns thereof (in each case, in their respective capacities as such), arising under, in connection with or related to the Debtors, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Loan Documents, and (2) there is entered a final non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding; *provided* that (i) as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date and (ii) any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such Challenge (and any Challenges not so specified prior to the Challenge Deadline shall be deemed forever, waived, released and barred).  Notwithstanding anything to the contrary in this Final Order, if, on or before the Challenge Deadline, the Official Committee (if appointed) or any other party in interest files a motion seeking standing to file a Challenge with a draft complaint identifying and describing all bases for such Challenge, the Challenge Deadline shall be tolled solely with respect to the bases asserted in such draft complaint and solely with respect to the moving party until the earlier of: (i) two (2) business days subsequent to the date of entry of an order granting standing to file such Challenge; and (ii) entry of an order denying such motion; *provided* that such extension shall only

apply to the bases for a Challenge asserted in the draft complaint that the Court has specifically found that the moving party has standing to assert.

(b)    If no such Challenge Proceeding is timely and properly filed prior to the Challenge Deadline, then, without further notice to any person or entity or order of the Court, (a) the Stipulations shall be binding on all parties in interest (including, without limitation, any Official Committee, if appointed); (b) the Prepetition Secured Obligations shall constitute allowed claims and shall not be subject to any defense, claim, counterclaim, recharacterization, subordination, disgorgement, offset, avoidance, for all purposes in these chapter 11 cases and any Successor Cases; (c) the Prepetition Loan Documents shall be deemed to have been valid, as of the Petition Date, and enforceable against each of the DIP Loan Parties in these chapter 11 cases and any Successor Cases; (d) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (e) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Loan Documents shall not be subject to any other or further claim or Challenge by any Official Committee (if appointed), any non-statutory committees appointed or formed in these chapter 11 cases or any Successor Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates.

(c)    If any such Challenge Proceeding is timely and properly filed prior to the Challenge Deadline, the Stipulations shall nonetheless remain binding and preclusive (as provided in paragraph 27(b) hereof) on any Official Committee (if appointed) and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.

(d)     The "Challenge Deadline" shall mean the date that (A) the later of (i) for any party in interest or an Official Committee (if appointed), 75 calendar days after entry of this Interim Order, or (ii) for an Official Committee appointed within 30 calendar days of the Petition Date, 60 calendar days after formation of such Official Committee, or (B) such later date that has been agreed to in writing, prior to the expiration of the deadline to commence a Challenge, by (i) with respect to the Prepetition CF Credit Facility, the Prepetition CF Credit Facility Agent (at the direction of the Required Lenders (as defined in the Prepetition CF Credit Agreement)) and (ii) with respect to the Prepetition ABL Credit Facility, the Prepetition ABL Credit Facility Agent (at the direction of the Required Lenders (as defined in the Prepetition ABL Credit Agreement)). Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Official Committee (if appointed) or any non-statutory committees appointed or formed in these chapter 11 cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

28.     **Limitations on Charging Expenses.** Except to the extent of the Carve Out, no costs or expenses of administration of these chapter 11 cases or any Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Secured Parties or the Prepetition Secured Parties (as the case may be) upon the DIP Collateral or Prepetition Collateral (as the case may be), shall be charged against or recovered from (a) the DIP Secured Parties or the DIP Collateral (including in respect of the Adequate Protection Liens), or any of the DIP Obligations or (b) the Prepetition Secured Parties, the Prepetition Collateral, or any of the Prepetition Secured Obligations, in each case, pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other

legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior express written consent of the Required DIP Lenders or the affected Prepetition Secured Party, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

29.    **No Marshaling.** In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Collateral, or the Prepetition Secured Obligations, as applicable, and all proceeds shall be received and applied in accordance with the DIP Orders, the DIP Loan Documents and the Prepetition Loan Documents, as applicable, including, for the avoidance of doubt, to the funding of the Carve Out, if applicable. Further, except to the extent of the Carve Out, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Agents or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any Prepetition Collateral.

30.    **Payments Free and Clear.** Any and all payments or proceeds remitted to the DIP Agent or the other DIP Secured Parties pursuant to the provisions of the DIP Orders, the DIP Loan Documents (including, without limitation, the Approved Budget (subject to Permitted Variances)) or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

31.    **Joint and Several Liability.** Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the DIP Loan Parties shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Final Order.

32.    **Right to Credit Bid.** (a) The DIP Agents or their designee (at the written direction of the Required DIP Lenders), on behalf of the DIP Secured Parties, shall have the unqualified right to credit bid, in accordance with the DIP Loan Documents, up to the full amount of the DIP Obligations; *provided that*, in connection with such credit bid, the DIP Secured Parties indefeasibly pay in full in cash all Obligations owing under the Prepetition ABL Credit Documents and (b) without abrogating the challenge rights set forth in paragraph 27 of this Final Order, the Prepetition Agents or their designee (at the written direction of the Prepetition Secured Parties), on behalf of the Prepetition Secured Parties shall each have the right to credit bid, in accordance with the Prepetition Loan Documents, up to the full amount of the Prepetition Secured Obligations under the applicable prepetition facility, in each case, in connection with any sale or other disposition of all or any portion of the DIP Collateral or Prepetition Collateral (as applicable), as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same, including, without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, and shall each automatically be deemed a "qualified bidder" with respect to any disposition of DIP Collateral or Prepetition Collateral (as applicable) under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.

The DIP Agents (at the direction of the Required DIP Lenders) and the Prepetition Agents (at the direction of the Required Lenders (as defined in the Prepetition Loan Documents)), shall each have the absolute right to assign, transfer, sell or otherwise dispose of its rights to credit bid in connection with the assignment, transfer, sale, or disposition of the corresponding DIP Obligations, except as may be set forth in the DIP Loan Documents.

33.     **Rights Preserved.** Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Secured Parties or the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Secured Parties or the Prepetition Secured Parties under the DIP Loan Documents, the Prepetition Loan Documents, the Prepetition Intercreditor Agreement, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of these chapter 11 cases, conversion of any or all of these chapter 11 cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Final Order.

34.     **Intercreditor Agreement.** Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement and any other applicable intercreditor or subordination

provisions contained in any of the Prepetition Loan Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties, and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Final Order.

35.    **No Waiver by Failure to Seek Relief.** The failure of any of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Orders, the DIP Loan Documents, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise. No delay on the part of any party in the exercise of any right or remedy under this Final Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Final Order shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought. No consents required hereunder by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or the Prepetition Secured Parties.

36.    **Binding Effect of this Final Order.** Immediately upon entry of this Final Order by the Court, this Final Order shall inure to the benefit of the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties, and the provisions of this Final Order (including all findings and conclusions of law herein) shall be valid and binding upon the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, any and all other creditors of the Debtors, any Official Committee (if appointed) or non-statutory committees appointed or formed in these chapter 11 cases, any and all other parties in interest and the respective successors and assigns of each of the

foregoing, including any trustee or other fiduciary hereafter appointed as legal representative of any of the Debtors in any of these chapter 11 cases or any Successor Cases, or upon dismissal of any of these chapter 11 cases; *provided* that (a) nothing in this paragraph 36 shall confer final status on this Final Order and (b) the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

37.    **Survival**. The terms and provisions of this Final Order, including, without limitation, (a) the Carve Out and (b) all of the rights, privileges, benefits and protections afforded herein and in the DIP Loan Documents (including the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Claims, and any other claims, liens, security interests, and other protections (as applicable)) granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to the DIP Orders and the DIP Loan Documents (collectively, the "DIP Protections"), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities, and shall not be modified, impaired or discharged by, entry of any order that may be entered (i) confirming any plan of reorganization in any of these chapter 11 cases, (ii) converting any or all of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any or all of these chapter 11 cases, or (iv) pursuant to which the Court abstains from hearing any of these chapter 11 cases, in each case, until (x) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Final Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all

commitments to extend credit under the DIP Facility are terminated, and (y) in respect of the Prepetition Secured Obligations, all of the Prepetition Secured Obligations have been indefeasibly paid in full in cash (or, in respect of outstanding letters of credit (if any), cash collateralized). This Court shall retain jurisdiction, notwithstanding any such confirmation, conversion or dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Parties' adequate protection.  Notwithstanding anything to the contrary in this Final Order, the DIP Protections afforded to the Prepetition Secured Parties under the DIP Orders are subject to the challenge rights set forth in paragraph 27 in all respects.

38.    **Discharge Waiver/Release.** The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of these chapter 11 cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, (i) unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or (ii) the DIP Lenders have otherwise agreed in writing in respect of the applicable obligations owed to each of them (including the agreement reflected in the Restructuring Support Agreement).

39.    **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.** The DIP Secured Parties have acted in good faith in connection with the DIP Facility, the DIP Loan Documents, and this Final Order, and their reliance on this Final Order is in good faith. Based on the findings set forth in the DIP Orders and the record made during the Hearings, and in accordance with section 364(e) of the Bankruptcy Code, the DIP Secured Parties and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code, the DIP Orders and the DIP Loan Documents. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal,

modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection obligations incurred prior to the actual receipt of written notice by the DIP Agents and the Prepetition Agents of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Obligations, the DIP Liens, the Adequate Protection Liens, the Prepetition Liens, or the Prepetition Secured Obligations. Notwithstanding any such reversal, modification, vacatur or stay of this Final Order, any DIP Obligations, DIP Liens, or Adequate Protection Liens incurred by the DIP Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agents and the Prepetition Agents of the effective date of such reversal, modification, vacatur stay shall be governed in all respects by the original provisions of this Final Order.

40.    **No Modification of Final Order**. Until and unless the DIP Obligations have been indefeasibly paid in full in cash, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Required DIP Lenders in respect of the DIP Obligations, (i) any modification, stay, vacatur or amendment to this Final Order or (ii) a priority claim for any administrative expense or unsecured claim against any Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in these chapter 11 cases, equal or superior to the DIP Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agents (at the direction of the Required DIP Lenders) or the Prepetition Agents (at the direction of the Required Lenders, as defined in the applicable Prepetition Loan Documents), any order authorizing the use of Cash Collateral resulting from the DIP Collateral or the

Prepetition Collateral that is inconsistent with this Final Order; (c) without the prior written consent of the Required DIP Lenders, grant of any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as expressly provided in the DIP Loan Documents or this Final Order; or (d) without the prior written consent of the Prepetition Agents (at the direction of the Required Lenders, as defined in the applicable Prepetition Loan Documents), grant of any lien on any of the Prepetition Collateral with priority equal or superior to the Prepetition Liens or the Adequate Protection Liens, except to the extent expressly provided in this Final Order.

41.    **Limitation of Liability.** Nothing in this Final Order, the DIP Loan Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties (in each case, in their capacities as such) of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Secured Parties comply with their obligations under the DIP Loan Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the DIP Loan Parties.

42.    **Final Order Controls.** In the event of any conflict or inconsistency between or among the terms or provisions of the Interim Order, this Final Order, or any of the DIP Loan Documents, unless such term or provision in this Final Order is phrased in terms of "defined in"

or "as set forth in" the DIP Loan Documents, the terms and provisions of this Final Order shall govern and control.

43.    **No Third-Party Rights.** Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary.

44.    **Medicare and Medicaid.** Notwithstanding anything in the DIP Orders, the DIP Credit Agreement, or any other DIP Loan Documents:

(a)    nothing shall (i) restrain, limit or impact any action by the U.S. Department of Health and Human Services, the Centers for Medicare & Medicaid Services or Medicare Administrative Contractors to implement the Medicare program; (ii) affect, modify or impair any governmental unit's recoupment or setoff rights, claims, or defenses; and (iii) be construed to affect the exclusive jurisdiction of the U.S. Department of Health and Human Services to adjudicate and pay Medicare claims in the ordinary course; and

(b)    nothing shall impair the Texas Health and Human Services Commission's rights of recoupment under the Medicaid Program, which shall remain unaffected. Each of the Debtors' bankruptcy estates (debtor-in-possession or any subsequently appointed trustee) shall retain its rights to contest the amount of any recoupment after exhausting its administrative remedies to challenge such amount.

45.    **Adequate Protection for the United States**. Notwithstanding anything in the DIP Orders, the DIP Credit Agreement, or any other DIP Loan Documents, the United States is provided the following adequate protection: (a) notwithstanding the mutuality requirements under section 553 of the Bankruptcy Code, to the extent the United States' interest and setoff rights in any payments due the Debtors for prepetition services (the "Prepetition Payments") have been, or

will be, reduced by payments made by the United States to the Debtors on or after the Petition Date, the United States shall have setoff rights against amounts it owes to the Debtors for postpetition services ("Postpetition Payments"), to the same extent that it had setoff rights against the Prepetition Payments as of the Petition Date; (b) to the extent that the United States does not satisfy any prepetition debt owed to it by the Debtors via recoupment or setoff, the United States shall have an allowed secured claim under section 506(a) of the Bankruptcy Code in the Debtors' chapter 11 cases in an amount equal to the amount of the Prepetition Payments made on or after the Petition Date, minus all amounts set off by the United States against the Prepetition Payments or the Postpetition Payments (the "USA Allowed Secured Claim"); *provided, however*, for the avoidance of doubt, that the USA Allowed Secured Claim shall not exceed the amount of the Prepetition Payments made on or after the Petition Date, minus all amounts set off by the United States against the Prepetition Payments or the Postpetition Payments; and (c) the Centers for Medicare & Medicaid Services ("CMS") may recoup prepetition overpayments (including overpayments attributable to prepetition services) owed to the Debtors from Postpetition Payments made to the Debtors in accordance with applicable Medicare law, the terms of the Debtors' Medicare Enrollment Agreements and Medicare Provider Agreements, and CMS' prior ordinary course of business practices with the Debtors.

46.    **Health Care Service Corporation**.  Notwithstanding anything to the contrary in the DIP Orders, the DIP Credit Agreement, or any other DIP Loan Documents, any rights of setoff or recoupment that may be asserted by Health Care Service Corporation or any of its affiliates under applicable non-bankruptcy law shall not be impaired, altered, primed, subordinated, waived and/or modified in any way as a result of the entry of this Final Order, and shall remain in full

force to the same extent and in the priority in which they existed immediately prior to the Petition Date.

47.    **Cardinal Health 110.** Notwithstanding anything to the contrary in the DIP Orders, the DIP Credit Agreement, or any other DIP Loan Document, the relief granted pursuant to the DIP Orders shall not, or not be deemed to, impair, prime or modify any of Cardinal Health 110's ("<u>CH 110</u>") rights, remedies or defenses in, to, or in connection with, that certain pre-petition cash deposit in the approximate amount of $1,900,491.00, which is currently being held by CH 110, including the priority of CH 110's prepetition liens or security interests therein, if any.

48.    **Med One Capital Funding, LLC.**  Notwithstanding anything to the contrary in the DIP Orders, the DIP Credit Agreement, or any other DIP Loan Document, the DIP Secured Parties will not have a lien on any property belonging to the Med One Capital Funding, LLC or its affiliates, including, without limitation, any equipment leased to the Debtors, and no properly perfected liens, if any, on any of the Debtors' assets held by Med One Capital Funding, LLC or its affiliates shall be primed or subject to any *pari passu* liens.

49.    ***Nunc Pro Tunc* Effect of this Final Order.** This Final Order shall take effect and shall be enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d) and 7062 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

50.    **Bankruptcy Rules.** The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

51.     **Necessary Action.** The Debtors are authorized to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Final Order.

52.     **Headings.** Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

53.     **Notice of Entry of this Final Order.** The Debtors' counsel shall serve a copy of this Final Order or a suitable notice respecting same on the Notice Parties.

54.     **Retention of Jurisdiction.** The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Final Order.

Dated: May 6th, 2020
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE